UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ELECTRONICALLY FILED

| | |
|---|---|
| DARCELLA MEANS, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| ) | |
| ) | |
| ) | CASE NO. 3:21-cv-711-RGJ |
| vs. ) | |
| ) | |
| ) | |
| OFFICER LASHA BEARDEN, et al, ) | |
| ) | |
| ) | |
| DEFENDANTS. ) | |

## AMENDED COMPLAINT

Comes the Plaintiff, Darcella Means (hereinafter "Plaintiff" or "Darcella Means" or "Ms. Means"), by and through counsel, and for her Amended Complaint against the Defendants, Officer Lasha Bearden (hereinafter "Officer Bearden") and Officer Keshonda Rudolph (hereinafter "Officer Rudolph"), states as follows:

### I. JURISDICTION

1. This Amended Complaint seeks, inter alia, damages pursuant to 42 U.S.C.A. § 1983 and 42 U.S.C.A. § 1988 for violation of Plaintiff's civil rights.

2. Jurisdiction is founded on 28 U.S.C.A. § 1331 and 28 U.S.C.A. § 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C.A. § 1367.

## II. VENUE

3. The acts or omissions giving rise to the Plaintiff's' claims arose in Jefferson County, Kentucky. Thus, pursuant to 28 U.S.C.A. § 1391(b)(2), venue is proper in the Western District of Kentucky, Louisville.

## III. PARTIES

4. At all times pertinent hereto, Defendants Officer Bearden and Officer Rudolph[1] committed acts under the color of state law which deprived Plaintiff Darcella Means of her rights, privileges and immunities secured by the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States; such acts being more specifically stated herein.

5. On or about September 2, 2020, Ms. Means, a blue eye, light skinned, African-American woman, and United States citizen, in her mid thirties, was at her residence when she was taken into custody and detained by peace officer assigned to a Jefferson County Drug Court for failing her court ordered drug test.

6. Ms. Means was ordered by a Jefferson County Judge to enter the Louisville/Jefferson County Metro Department of Corrections (hereinafter "LMDC") drug recovery program named "Enough is Enough".

7. Ms. Means was transported to the LMDC facility located at 400 South Sixth Street, Louisville, Kentucky 40202.

---

[1] *Note:* Officer Bearden and Officer Rudolph are also hereinafter referred to collectively as "Defendants".

8. On the same said date, Ms. Means arrived at the said LMDC facility to be committed to the LMDC's ninety (90) day drug recovery program named "Enough is Enough", as a patient-inmate for assistance in her journey of recovery with her re-entry into society as a productive, and responsible law abiding citizen.

9. Upon information and belief, once Ms. Means arrived at the said facility she was processed through the booking procedures.

10. Officer Bearden and Officer Rudolph were on duty as correctional officers for LMDC when Ms. Means arrived.

11. Ms. Means arrived to the said location fully dressed with a wig glued on her head.

12. Ms. Means was subject to an initial pat-down search conducted by a LMDC correctional-officer or an agent thereof, and that initial search resulted in the negative.

13. During that said search, Officer Bearden put her fingers through Ms. Means hair on her head and asked —*[i]s it glued or sowed*, or words to that effect.

14. Ms. Means said *[i]t is glued*, or words to that effect.

15. Suddenly, Officer Bearden pulled the wig off of Ms. Means' head.

16. After the initial search, while being processed on the booking floor, Officer Bearden subjected Ms. Means to a body scanner for her to be scanned.

17. Ms. Means complied with Officer Bearden's and the other officers' orders.

18. Ms. Means was scanned multiple times.

19. After at least three (3) scans of Ms. Means person, Officer Bearden ordered Ms. Means to a room to be stripped of all of her clothings and then searched.

20. After complying with Officer Bearden's orders, Ms. Means exited the said machine.

21. While Ms. Means was exiting the said machine, Officer Rudolph arrived and then her and Officer Bearden walked Ms. Means to a room to be stripped searched.

22. Ms. Means complied with all of Officer Bearden's and Officer Rudolph's orders while being walked to the said room.

23. When Ms. Means, Officer Bearden, and Officer Rudolph entered the room, Officer Bearden closed the door and Ms. Means was ordered by both Officer Bearden and Officer Rudolph to remove all of her clothing, including her undergarments.

24. Again, Ms. Means complied with the orders of both said officers.

25. Officer Bearden and Officer Rudolph watched Ms. Means fully undress herself.

26. The said officers viewed Ms. Means' nude body, and conducted another search.

27. This said search also resulted in the negative.

28. After their search resulted in the negative, Officer Bearden became infuriated, took an aggressive stance, and said to Ms. Means in a firm and sarcastic tone "*[y]ou think you are cute!*"

29. From the tone of Officer Bearden's voice and her body language, Ms. Means became alarmed and worried.

30. Ms. Means then said, "*[e]xcuse me, but I don't know either one of you all.*"

31. Officer Bearden responded to Ms. Means, by saying in a firm and aggressive tone, "*[d]on't worry about it! Oh! Don't you worry, we are about to embarrass your ass!*"

32. Not sure what was going to happen next, Ms. Means became more afraid.

33. Then Officer Bearden inserted her hand under Ms. Means arm pit and forcibly attached her grip upon Ms. Means body and Officer Rudolph inserted her hand under Ms. Means other arm pit and forcibly attached her grip upon Ms. Means body.

34. After both Officer Bearden and Officer Rudolph grabbed Ms. Means, one of the said officers opened the door that exited the room.

35. Knowing that there were all kinds of people (male and female) either working or waiting to be processed through the booking procedures of the facility present outside of the room, Ms. Means became tensed and feared what was going to happen next.

36. Officer Bearden and Officer Rudolph then forced Ms. Means from the room.

37. After exiting the room, Officer Bearden and Officer Rudolph increase their grip of Ms. Means' body, rendering her to feel helpless.

38. Using their vigorous grip and physical control over Ms. Means, the said officers notoriously paraded Ms. Means —*while fully naked*— through the open area for all to see, including male and female LMDC officers, LMDC non-officer employees, visitors, and detainees.

39. Officer Bearden and Officer Rudolph continuously maintained their vigorous grip and control over Ms. Means, while parading Ms. Means through the open area.

40. There were at least seven (7) male officers and at least five (5) male detainees present in the booking area that witnessed Ms. Means being marched through the said area fully nude.

41. While she was being paraded in front of these men —*fully naked*, the men began chanting out loud "[h]ell yeah, that is what I am taking about".

42. The group of men were also heard screaming —*yeah this is what goes down in here*, or words to that effect.

43. After marching Ms. Means through the said area, they arrived to another room.

44. Once in front of the room, Officer Bearden and Officer Rudolph then pushed Ms. Means in the room and closed the door.

45. While outside the door, Officer Bearden and Officer Rudolph were joking about the incident and laughing.

46. While still laughing and joking, Officer Bearden and Officer Rudolph placed a plastic bag over the door window.

47. About forty-five (45) minutes later, an unknown male officer opened the door and looked at Ms. Means while she was still naked and handed her the clothes that Officer Bearden and Officer Rudolph ordered her to remove from her body.

48. After Ms. Means clothed herself, another male officer came in the room and ordered Ms. Means to walk back in the presence of the same group of men who had celebrated seeing her naked.

49. Later that day, Ms. Means —due to her lack of understanding of the LMDC's grievance process— kept asking LMDC employees and officers about the process for filing a complaint against the defendants but she was ignored.

50. However, she still managed to timely file a grievance in regard to the defendants' conduct as stated herein.

51. Almost everyday from September 3, 2020, until October 21, 2020, Ms. Means kept inquiring and requesting from LMDC officers and employees for updates in regard to her filed grievance, but she was again ignored and/or informed that her grievance will not be heard, entertained, nor considered.

52. After receiving no response to her inquiries, on October 21, 2020, Ms. Means filed other grievance complaining of the defendants' conduct.

53. On or about October 23, 2020, Ms. Means grievance was denied.

54. Ms. Means —due to her lack of understanding of LMDC's grievance process— inquired and requested information from LMDC employees and officers about the appeal process, but was again ignored.

55. However, she managed to timely request that her denial be submitted to the director of LMDC for an appeal.

56. From October 26, 2020, until sometime in December 2020, Ms. Means kept inquiring and requesting from LMDC officers and employees for updates in regard to her appeal, but she was again ignored.

57. On or about December 11, 2020, Ms. Means was informed by LMDC officers and employees that her issues were not going to be addressed nor considered because there was an investigation pending and the defendants were going to be reprimanded for their conduct.

58. From December 11, 2020, until January of 2021, Ms. Means kept inquiring and requesting from LMDC officers and employees for updates in regard to her filed appeal, but she was again ignored and denied any and all information concerning the events that occurred and her appeal.

59. Ms. Means was singled out by Officer Bearden because of her appearance, the complexion of skin, and the color of her eyes.

60. Ms. Means complied with all of the officers' orders.

61. Upon information and belief, there were no other detainees that arrived at the LMDC facility subjected to a strip search.

62. As a result of the foregoing actions of Officer Bearden and Officer Rudolph, in which they inserted their hands under Ms. Means's arm pits, vigorously forced their grip upon Ms. Means's body, and continuously maintained the pressure, Ms. Means suffered contusions and soreness under the area of her arm pits.

63. As a result of the foregoing actions of Officer Bearden and Officer Rudolph, Ms. Means has been unable to sleep, experienced inhibited sexual desire, has suffered extreme humiliation, embarrassment, loss of enjoyment of life, alienation, and mental anguish for which she now seeks compensatory and punitive damages.

64. Since the incident in question, Ms Means has been struggling to overcome the aforementioned injuries.

65. At all times during the aforesaid mentioned incident, Defendants on numerous occasions repeatedly subjected Ms. Means to this unwanted sexual extreme humiliation, and was able to do so on the basis of their position of authority as LMDC correction officers.

## IV. FEDERAL CLAIMS

### COUNT I
### VIOLATIONS OF 42 U.S.C. § 1983

66. Plaintiff re-alleges and incorporates by reference each of the allegations contained in paragraphs 1 through 65 of this Amended Complaint.

67. Defendants, Officer Bearden and Officer Rudolph, while acting under the color of law, and acting in their official capacity and within the scope of their employment as LMDC

     correction officers for the Louisville/Jefferson County Metro Government committed acts as alleged above, which deprived Ms. Means of her rights, privileges and immunities secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and/or other applicable provisions of the United States Constitution, federal laws, and/or state law rights or privileges found in Kentucky's constitution and tort laws.

68. Those deprivations included, but may not be limited to deliberate indifference to Ms. Means's right to privacy, her right to personal integrity, her right to be free from unwanted and unreasonable physical contact, her right to be free from improper and unreasonable searches and seizures, her right to be free from unwanted intrusion upon her person, her right to be free from physical assault and battery, her right to be free from excessive force, her right to be free from unwanted sexual humiliation, her right to be free from cruel and unusual punishment, and her right to substantive and procedural due process.

69. As a direct and proximate result of the Defendants' violation of Ms. Means' civil and constitutional rights as stated above, Ms. Means has suffered and incurred consequential, actual and compensatory damages.

70. Defendants' violation of Ms. Means' clearly established civil and constitutional rights as stated above were a substantial factor in causing Ms. Means to suffer pain of body and mind, physical and mental injuries, medical expenses, past and future, and the impairment of her ability to earn money in the future.

71. The Defendants acted intentionally, maliciously or with reckless disregard or callous indifference in violation of the rights of Ms. Means and are liable for damages.

## V. STATE CLAIMS

### COUNT II
### KENTUCKY ASSAULT AND BATTERY

72. Plaintiff re-alleges and incorporates by reference each of the allegations contained in paragraphs 1 through 71 of this Amended Complaint.

73. Defendants Officer Bearden and Officer Rudolph intentionally and maliciously directed the use of unlawful force at Ms. Means that resulted in each such circumstances a well-founded fear of immediate peril or harm in Ms. Means' mind.

74. Further, each instance of contact between Defendants Officer Bearden and Officer Rudolph and Ms. Means amounted to an unwanted physical touching or battery.

75. Defendants' Officer Bearden and Officer Rudolph actions in each instance constitute assault and/or battery.

76. Defendants Officer Bearden's and Officer Rudolph's violation of Ms. Means' clearly established civil rights and of her rights under Kentucky law as stated above were a substantial factor in causing Ms. Means to suffer physical pain.

77. Defendants Officer Bearden and Officer Rudolph acted intentionally, maliciously, and/or with reckless disregard and/or callous indifference in violation of the rights of Ms. Means and are liable for damages.

### COUNT III
### KENTUCKY INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Tort of Outrage)

78. Plaintiff re-alleges and incorporates by reference each of the allegations contained in paragraphs 1 through 77 of this Amended Complaint.

79. Defendants, Officer Bearden and Officer Rudolph, acted in an intentional and reckless manner when they committed the acts enumerated above.

80. The aforementioned conduct of the said Defendants were so outrageous and intolerable that it offend the generally accepted standards of decency and morality.

81. The aforementioned conduct was a substantial factor in causing Ms. Means extreme and severe emotional distress.

82. As a result of the degrading and shaming parade sustained at the hands and control of the Defendants, Ms. Means has suffered severed emotional distress.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Darcella Means, by Counsel, demands jointly and severally judgment against the Defendants in amounts considered fair and reasonable by the jury based upon the evidence and for the following:

1. Compensatory damages for medical costs and pain and suffering, and for psychotherapy and psychological anguish and pain and suffering, in amounts as will be shown and proven at trial for the violation of her civil rights, assault and battery upon the Plaintiff, and the intentional infliction of emotional distress;

2. Punitive damages for the Defendants' conduct;

3. Her past, present and future physical, mental and emotional pain, suffering and humiliation;

4. Her impairment to labor and earn money in the future;

5. Medical expenses, past and future;

6. Reimbursement for fees and other consequential expenses;

7. Reasonable attorney fees pursuant to 42 U.S.C. § 1988;

8. All costs herein incurred;

9. TRIAL BY JURY on all issues so triable; and,

10. Any and all other relief to which Plaintiff may appear entitled, including leave to amend this Amended Complaint.

Date: March 13, 2022.

Respectfully submitted,

*/s/ Shaun A. Wimberly, Sr.*
SHAUN A. WIMBERLY, SR.
Wimberly and Associates, PLLC.
Waterfront Plaza, Suite 1816
Louisville, KY 40202
Office: (502) 208-1887
Fax: (502) 208-1858
***COUNSEL FOR PLAINTIFF***
